CURTIS A. WEBER and JOYCE WEBER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Weber v. Commissioner
Docket No. 7890-76.
United States Tax Court
T.C. Memo 1978-110; 1978 Tax Ct. Memo LEXIS 405; 37 T.C.M. (CCH) 493; T.C.M. (RIA) 780110; March 21, 1978, Filed Curtis A. Weber, pro se. J. Anthony Hoefer, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined deficiencies in petitioners' Federal income tax as follows: Taxable Year
Deficiency
1973
$153.75
1974
$166.31
The issue remaining *406 for decision is whether premiums paid by petitioners to the Allstate Insurance Company for an insurance policy are deductible as amounts paid for medical care insurance under the provisions of section 213. [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At the time of the filing of the petition herein, Curtis A. and Joyce Weber were husband and wife and resided in Bellevue, Nebraska. Petitioners filed their joint Federal income tax returns for the taxable years 1973 and 1974 with the Internal Revenue Service Center, Ogden, Utah. During the years in issue, petitioner Curtis A. Weber, hereinafter referred to as petitioner, had a contract of insurance with the Allstate Insurance Company. The annual premium for the insurance contract was $229.00. Coverage A2 of the policy was a "Sickness Income Benefit." The cost allocated to Coverage A2 was $164.85 per year. The balance of the total premium was for accident and death coverage. Under Coverage A2, Allstate *407 agreed to pay a monthly benefit of $500.00 for each month of the insured's total disability resulting from sickness, beginning on the first day of total disability following a waiting period and continuing with some limitations, for a maximum period of two years. The policy also provided that after total disability existed continuously for 180 days, Allstate would waive any remium for the policy which thereafter became due during a period of total disability for which monthly benefits were payable. The policy also provided for a limitation of benefits payable to the insured. This limitation provided, in relative part, that if the total monthly benefits received by the insured under all his insurance plans exceeded the greater of the insured's monthly earnings at the time disability commenced or the insured's average montly earnings for the period of two years immediately preceding the disability, Allstate's liability was limited to the proportion that the amount of such monthly earnings or of such average monthly earnings bears to the total amount of monthly benefits under all such coverages upon the insured at the time that disability commences. The words "total disability, *408 " as defined in the policy, mean disability that continuously prevents the insured from performing the duties of his occupation. The policy further provided that after disability payments were received for two years, "total disability" thereafter means disability that continuously prevents the insured from engaging in any wage-earning occupation of profitable employment for which the insured was or might have become reasonably qualified by education, training or experience. Respondent contends that no part of the premiums paid to Allstate were paid to obtain insurance covering expenses of medical care. Petitioner contends that the premiums paid under Coverage A2 of the policy constitute insurance for medical care and are therefore deductible under the provisions of section 213. OPINION During 1973 and 1974, petitioners paid annual premiums of $229.00 to Allstate Insurance Ocmpany. The premiums were paid to obtain a policy of insurance providing among other coverages, Coverage A2, which was entitled "Sickness Income Benefit." Under Coverage A2, Allstate agreed to pay $500.00 for each month of total disability resulting from sickness commencing while coverage was in force. *409 Petitioner contends that the premium paid for Coverage A2 is deductible under the provisions of section 213. Respondent contends that Coverage A2 is not insurance for medical care coverage within the meaning of section 213. Section 213(a) provides for a deduction to certain amounts paid during the taxable year for medical care of the taxpayer, his spouse and dependents. Section 213(e) defines "medical care" to include amounts paid for insurance covering the cost of diagnosis, cure, mitigation, treatment or prevention of disease, or for the purpose of affecting any structure or function of the body. The present statutory language governing the deductibility of medical care insurance premiums was enacted by Pub. L. No. 89-97, effective for taxable years beginning after December 31, 1966. 1965-2 C.B. 601, 603-604.The report of the Committee on Ways and Means explaining the statutory language stated that insurance contracts providing indemnity for loss of income, or for loss of life, limb or sight, are insurance for other than medical care. H. Rept. No. 213, 89th Cong., 1st Sess. 178 (1965), 1965-2 C.B. 733, 745. Based on a review of the provisions *410 of the policy, it is clear that no part of the $229.00 annual premium is deductible by the petitioner under the provisions of section 213. The policy provided for indemnity for loss of income or loss of life, limb and sight, not for the cost of services described in section 213. The triggering event of Coverage A2 was disability. Petitioner could have collected from Allstate without incurring any cost of medical care. Furthermore, the fact that the policy had a provision relating the benefits to the insured's earnings further evidences the fact that Coverage A2 indemnified petitioner for loss of earnings rather than the cost of medical care. Accordingly, since the policy is not for "medical care" as the term is defined in section 213(e)(1)(a), the premiums are therefore non-deductible personal expenses. See sections 213(e)(2) and 262. Decision will be entered for the Respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩